IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| MATTHEW LESTER and<br>EVELYN LESTER,<br><br>    Plaintiffs,<br><br>v.<br><br>CHANGE LENDING, LLC<br>d/b/a CHANGE HOME MORTGAGE,<br><br>    Defendant. | CIVIL ACTION NUMBER:<br><br>2:22-CV-114-RWS-JCF<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW, Matthew Lester and Evelyn Lester, Plaintiffs herein, and file this, their Complaint for Damages against Defendant Change Lending, LLC d/b/a Change Home Mortgage for violations of the Real Estate Settlement Procedures Act, and show this Honorable Court the following:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiffs Matthew Lester and Evelyn Lester are citizens of the State of Georgia and reside in Jackson County, Commerce, Georgia.

2.

Defendant Change Lending, LLC is a California limited liability company, with its principal place of business at 16845 Von Karman Avenue, Suite 200, Irvine, California, 92606.

3.

Defendant Change Lending, LLC maintains its registered office at Paracorp Incorporated, 279 West Crogan Street, Lawrenceville, Gwinnett County, Georgia 30046 and may be served with Summons and Complaint at this address.

4.

Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 in that one of the counts within this complaint involves a federal question.

5.

Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) in that all of the events and omissions giving rise to these claims occurred in this district.

**OPERATIVE FACTS**

6.

Plaintiffs are buying a home located at 188 Laura Lane, Commerce, Georgia 30529.

7.

Plaintiffs took out a mortgage and promissory note with Change Lending, LLC on August 18, 2021, which contains a clause requiring payment for certain items into an escrow account.

8.

Said "Escrow Clause" reads as follows:

> Funds for Escrow Items: Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property: (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items as called "Escrow Items." At origination or at any time during the terms of the Loan, Lender may require that Community Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing, In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Item, for which payment of

>Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items dircctly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to repay to Lender and such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Change Lending LLC's Security Deed is attached hereto as Exhibit A.

9.

As all times relevant to this Complaint, Plaintiffs have been and remain current on all payments on the mortgage, including amounts owed for Escrow Items.

10.

On December 16, 2021, Plaintiffs received a notice from USAA Insurance of the escrow change to Change Home Mortgage.

11.

On February 4, 2022, USAA mailed a letter to Plaintiffs that their insurance policy would be cancelled as of February 18, 2022 for non-payment.

12.

Due to insurance cancellation, Defendant purchased force-placed insurance on Plaintiff's home to cover Defendant's interest only.

13.

Plaintiffs received a letter dated March 30, 2022 from Defendant that stated "Our records show that your hazard insurance has expired, and we do not have evidence that you have obtained new coverage. **Because hazard insurance is required on your property, we plan to buy insurance for your property."** Emphasis in original. Mar. 30, 2022 Letter attached hereto as Exhibit B.

14.

On February 21, 2022, Plaintiffs, through counsel, sent a Real Estate Settlement Procedures Act Notice of Error under 12 C.F.R. § 1024 to Defendant via certified mail return receipt requested to Change Lending, LLC, d/b/a Change Home Mortgage, Customer Support Team, 16845 Von Karman Avenue, Suite 200, Irvine, CA 92606. Plaintiff's Notice of Error is attached hereto as Exhibit C.

15.

Plaintiffs have never received a response to their RESPA Notice of Error.

# THE REAL ESTATE SETTLEMENT PROCEDURES ACT

16.

The United States Congress, in enacting RESPA, found:

> The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a).

17.

Further Congress stated the purpose of RESPA:

> It is the purpose of this Act to effect certain changes in the settlement process for residential real estate that will result--
>
> (1) in more effective advance disclosure to home buyers and sellers of settlement costs;
>
> (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;
>
> (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and
>
> (4) in significant reform and modernization of local recordkeeping of land title information.

12 U.S.C. § 2601(b).

18.

RESPA defines a Qualified Written Request ("QWR") as follows:

> Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605e(1)(B).

19.

RESPA requires that a mortgage servicer respond to a homeowner's QWR in the following manner:

> Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

20.

Regulations promulgated under RESPA defines a "Notice Of Error":

(a) Notice of error. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. . . . A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with

> all requirements applicable to a notice of error with respect to such qualified written request.
>
> (b) Scope of error resolution. For purposes of this section, the term "error" refers to the following categories of covered errors:
>
> . . .
>
> (2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.
>
> . . .
>
> (4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).
>
> . . .
>
> (11) Any other error relating to the servicing of a borrower's mortgage loan.

12 C.F.R. § 1024.35(b).

21.

The mortgage servicer's duties after receiving a Notice Of Error are:

> Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:
>
> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the

> correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e).

22.

RESPA regulations require the following:

> Timely escrow disbursements required. If the terms of a mortgage loan require the borrower to make payments to the servicer of the mortgage loan for deposit into an escrow account to pay taxes, insurance premiums, and other charges for the mortgaged property, the servicer shall make payments from the escrow account in a timely manner, that is, on or before the deadline to avoid a penalty, as governed by the requirements in § 1024.17(k).

12 C.F.R. § 1024.34(a).

## **VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**

23.

Defendant Change Lending, LLC failed to pay Plaintiffs' homeowner's insurance premium from Plaintiffs' escrow account.

24.

Failure to pay Plaintiffs' escrowed insurance premiums is an "enumerated error" as stated at 12 C.F.R. § 1024.35(b)(4), which states:

> Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

25.

Plaintiffs have been damaged by Defendant's RESPA violation, as Plaintiffs have been paying for force-place coverage at a greater rate than would have been required for insurance had Defendant properly paid Plaintiffs' insurance premiums in accordance with RESPA.

26.

Plaintiffs have been additionally damaged by not having full coverage on their home for their potential personal property loss in the event of a fire or other loss.

27.

Defendant, by failing to accurately respond to Plaintiffs' Notice Of Error in accordance with RESPA laws and regulations, is liable to the Plaintiffs for actual damages to be proven by competent evidence. 12 U.S.C. § 2605(f)(1)(A).

28.

Defendant, by failing to accurately respond to Plaintiffs' Notice Of Error in accordance with RESPA laws and regulations, has demonstrated a pattern or practice of noncompliance with the requirements of RESPA, is liable to the Plaintiffs for additional damages in an amount not to exceed $2,000.00. 12 U.S.C. § 2605(f)(1)(B).

29.

Defendant, by failing to accurately respond to Plaintiffs' Notice Of Error in accordance with RESPA laws and regulations, is liable to the Plaintiffs for the costs of this action, together with any attorney's fees incurred in connection with this action as this Court may determine to be reasonable under the circumstances. 12 U.S.C. § 2605(f)(3).

**WHEREFORE**, Plaintiffs respectfully request that this Court:

a) Assume jurisdiction of this action;

b) Serve Defendant in manner prescribed by law;

c) Award Plaintiffs actual damages in an amount to be proven at trial and statutory damages in an amount up to $2,000 for each violation of RESPA committed by Defendant pursuant to 12 U.S.C. § 2605(f)(1)(B);

d) Award Plaintiffs the costs of this action, together with any attorney's fees as the court may determine to be reasonable under the circumstances pursuant to 12 U.S.C. § 2605(f)(3);

e) That Plaintiffs have a trial by jury; and

f) Award such other and further relief as is just and equitable.

Respectfully submitted, this 10th day of June, 2022.

                                       **HURT STOLZ, P.C.**

                                       /s/ James W. Hurt, Jr.
                                       By: James W. Hurt, Jr.
                                       Georgia Bar No.: 380104

1551 Jennings Mill Road, Unit 3100B
Watkinsville, Georgia 30677
(706) 395-2750
Facsimile (706) 996-2576
jhurt@hurtstolz.com                  **ATTORNEY FOR PLAINTIFFS**